Russell W. Faegenburg
Kendall K. Gurule
LERNER DAVID LLP
20 Commerce Drive
Cranford, NJ  07016
Tel:     908.654.5000

Lance G. Johnson (Admitted Pro Hac Vice)
JOHNSON LEGAL PLLC
12545 White Drive
Fairfax, Virginia 22030
Tel:     202-445-2000

*Attorneys for Plaintiff Renex NY Corp.*

**Document Filed Electronically**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RENEX NY Corp., | &#124; |
| Plaintiff, | &#124;   Civil Action No. 2:23-cv-489-WJM-JRA |
| v. | &#124; |
| SUPPLY DEPOT LLC, MATEUS ZIMA, | &#124; |
| ABSOLUTE COATINGS, INC., and | &#124; |
| POLYCARE SUPPLY GROUP LLC, | &#124; |
| Defendants. | &#124; |

## AMENDED COMPLAINT AND DEMAND FOR TRIAL BY JURY

Plaintiff Renex NY Corp. ("Renex" or "Plaintiff"), by its undersigned attorneys, alleges the following as and for its Amended Complaint against Defendants:

## PARTIES

1.      Plaintiff is a domestic corporation organized and existing under the laws of the State of New Jersey with a principal place of business in 12 Edgeboro Road, East Brunswick, New Jersey 08816 from which it operates the Amazon Storefront, "Aserson." Its sole shareholder is an individual who resides in the District of New Jersey.

2.      Upon information and belief, Defendant Supply Depot LLC is a limited liability company organized under the laws of the State of New Jersey and having an address of 129 Market Street,

1

Kenilworth, New Jersey 07020. Its two members, Vitaly and Dennis Zaretsky, are both residents of New Jersey.

3.        Mateus ("Matthew") Zima is an individual of unknown physical address with an email address of matthewzimanyc@gmail.com.

4.        Absolute Coatings, Inc.  was the owner of record of the POLYCARE registration (Reg. No. 1,574,242) from its filing in May 1989 until an assignment document dated July 5, 2022. This assignment was recorded at the US Patent and Trademark Office on November 29, 2022. Absolute Coatings is a Delaware corporation with an address of 1999 Elizabeth Street North Brunswick, New Jersey 08902.

5.        Polycare Supply Group LLC is current owner of record of the POLYCARE registration. Its listed address is 125 Market Street, Kenilworth, New Jersey 07033. Vitaly Zaretsky is the sole Member and resident of New Jersey.

<u>JURISDICTION AND VENUE</u>

6.        This Court has subject matter jurisdiction over this action pursuant to the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202; the Trademark Act of 1946, as amended, 15 U.S.C. §§ 1051 *et seq*., including 15 U.S.C. § 1121; and 28 U.S.C. §§ 1331, 1338, and 1367.

7.        This Court has personal jurisdiction over Defendants because, upon information and belief: (1) Defendants do substantial business and have substantial and continuous contacts with New Jersey; (2) Defendants Supply Depot LLC and Polycare Supply Group LLC are incorporated in this judicial district, and Defendants Supply Depot LLC, Polycare Supply Group LLC, and Absolute Coating, Inc. have their principal places of business located in this judicial district; and/or (3) Defendants regularly solicit business from, do business with, and/or derive revenue from consumers located in this judicial district.  For at least these reasons, therefore,

Defendants should reasonably expect that their activities might have consequences in this judicial district.

8.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District.

## BACKGROUND

9.      Plaintiff is a seller of many types of products in the online marketplace <amazon.com> that is owned and operated by Amazon.com, Inc. ("Amazon").  One of the products offered for sale by Plaintiff is a two pack of a hardwood floor cleaning product bearing the mark CRAFTSMAN'S CHOICE.

10.      When Plaintiff started selling this product on Amazon at a time before July 5, 2022, the listing bore the title: "(2 Pack) PolyCare 70020 Cleaner concentrate 20 Oz." with the product image for the CRAFTSMAN'S CHOICE product as follows:



11.      After a visual inspection and comparison of the product with the image on the listing, Plaintiff packed and sent its CRAFTSMAN'S CHOICE to Amazon under the existing POLYCARE listing with the CRAFTSMAN'S CHOICE product pictures under the existing Amazon Standard Identification Number (ASIN) B01G96E0UE.

12.     Plaintiff bought all of its CRAFTSMAN'S CHOICE product from an authorized distributor of Absolute Coatings, Inc. at a time before July 5, 2022 and did not alter or modify the product or its packaging in any way.

13.     At no time has Plaintiff offered for sale a product carrying a POLYCARE mark.

14.     The POLYCARE mark for "floor cleaners for polyurethane treated floors" was filed by Absolute Coatings, Inc. on October 10, 1989, registered on January 2, 1990, as Registration No. 1,574,242 (Exhibit 1) and was still owned by Absolute Coatings, Inc. as late as July 5, 2022 (Exhibits 1 and 2).

15.     The assignment records of the US Patent and Trademark Office (Exh. 2) show that Absolute Coatings, Inc. assigned ownership of the POLYCARE registration to Polycare Supply Group LLC in a document dated July 5, 2022 but which was not recorded until November 29, 2022.

16.     Absolute Coatings was the owner of the POLYCARE registration when Plaintiff submitted its offering to Amazon for its two pack of the CRAFTSMAN'S CHOICE cleaner.

17.     Absolute Coatings Inc. had rights in the CRAFTSMAN'S CHOICE mark when Plaintiff purchased the CRAFTSMAN'S CHOICE product that Plaintiff offered for sale on Amazon. (See Exhibit 9.)

18.     Absolute Coatings Inc. manufactured the CRAFTSMAN'S CHOICE product and properly applied the CRAFTSMAN'S CHOICE mark to those products that Plaintiff later offered for sale on Amazon.

19.     After Plaintiff sent its CRAFTSMAN'S CHOICE product to Amazon, the Amazon product image of the two-pack listing was changed to show two bottles of POLYCARE product rather than the previous picture of two CRAFTSMAN'S CHOICE bottles.

20.      In 2022, the owners of the POLYCARE mark announced a transition of the brand name for the product from POLYCARE to CRAFTSMAN'S CHOICE but with the same formula. (*See* Exhs. 3, 4.)

21.      On June 29, 2022, Plaintiff received a notification from Amazon that an individual named Matthew Zima had filed a complaint with Amazon asserting that the CRAFTSMAN'S CHOICE product sent to Amazon earlier by Plaintiff represented an inauthentic, counterfeit POLYCARE product.  (Exh. 5.)

22.      Christopher D. Olszyk of Fox Rothschild LLP is the original counsel of record for the POLYCARE registration and remains counsel of record following the assignment. (Exh. 1.) Mr. Olszyk is also counsel of record for the CRAFTSMAN'S CHOICE registration. (Exh. 10.)

23.      On November 22, 2022 (one week before the assignment was recorded), counsel for Plaintiff sent Mr. Olszyk an email regarding the complaints filed by Mr. Zima with Amazon. (Exhibit 10.) That email specifically asked "Do you know, or can you confirm whether, Mr. Zima is associated with Polycare Supply Group and that he has authorization to enforce the POLYCOAT mark on its behalf?

24.      Mr. Olszyk did not respond to that November 22 email nor did he disavow the actions of Mr. Zima on behalf of Absolute Coatings in circumstances when it would have been reasonable to do so.

25.      From this silence in the circumstances, Plaintiff has a reasonable belief that Absolute Coatings was aware of, condoned, or otherwise approved of the actions of Mr. Zima in submitting the complaint filed with Amazon around June 29, 2022 that alleged Plaintiff was selling counterfeit POLYCARE products.

26.     Defendants and Plaintiff are direct competitors who sell their goods via Amazon storefronts.

27.     Defendants' illegal actions have irreparably damaged, and threatened to destroy, Plaintiff's successful business.

## AMAZON AND ITS MARKETPLACE

28.     Amazon is the  largest online retailer in the United States.

29.     According to published reports, Amazon is worth more than the next eight largest retailers located in the United States combined.  *See* JP Mangalindan, *Amazon is now worth more than America's 8 largest retailers combined*, Yahoo Finance (Jan. 25, 2017), https://finance.yahoo.com/news/amazon-is-now-worth-more-than-americas-8-largest-retailerscombined-124101625.html.

30.     Amazon's online e-commerce platform allows for third parties, like Plaintiff, to sell products on its e-commerce platform.

31.     The privilege of selling on Amazon is highly advantageous, as Amazon provides third-parties with exposure to the world marketplace on a scale that no other online retailer can currently provide.

32.     The ability to sell products in the Amazon Marketplace is very valuable to a seller such as Plaintiff.

33.     For many years, Plaintiff has had a contractual and business relationship with Amazon, such that Plaintiff was and is permitted to sell products on Amazon's e-commerce platform.

34.     Third-party sellers, like Plaintiff, create an online storefront on Amazon.  When a customer buys a product on Amazon, the customer can see the online store from which the

customer is purchasing a product.  Thus, Plaintiff has the online equivalent of a brick-and-mortar store.

35.      A significant portion of Plaintiff's business is derived from the sale of products on Amazon and, in particular, through its Amazon storefront.

36.      In general, transactions on Plaintiff's Amazon storefront are completed by Amazon, whereby Plaintiff ships products to the Amazon warehouses, and Amazon then ships Plaintiff's products from its warehouse to the buyer.  This program is known as "Fulfilment by Amazon" or "FBA."

37.      Plaintiff has invested significant efforts into building a successful and reputable Amazon storefront.

38.      Any harm that comes to the relationship between Plaintiff and Amazon creates a potential for serious and irreparable injury Plaintiff.

39.      Amazon has developed an automated process for addressing complaints by Rights Owners and their agents relating to the sale of goods that are inauthentic, counterfeit, and/or infringe on intellectual property rights.  Pursuant to that process, Amazon will often suspend sellers about whom such complaints are made without notice.

40.      "Counterfeit" is a term of art that connotes goods that are false or fraudulent copies of legitimate goods or otherwise infringe on intellectual property rights.  Inauthentic is used interchangeably with the term counterfeit on Amazon.

41.      The Lanham Act defines a "counterfeit" as "a spurious mark, which is identical with, or substantially indistinguishable from, a registered mark."  15 U.S.C. § 1127.

42.      At no time did Plaintiff market or sell any goods that were counterfeit or infringed on the intellectual property rights of Defendants.

43.     Each product listed for sale on Amazon is assigned a unique ASIN.  It is Amazon's policy to prevent a product from being assigned multiple ASINS.  In furtherance of that policy, Amazon requires sellers who wish to market and sell a product that is already listed for sale on Amazon to join the existing ASIN listing.

44.     Other than adding itself to the relevant listings as set forth *infra*, Plaintiff neither created nor modified those listings.

45.     During the relevant period, Plaintiff joined the existing listings for ASIN B01G96E0UE (POLYCARE 2-pack) with the intent to sell the CRAFTSMAN'S CHOICE products depicted therein.

46.     On or about June 29, 2022, Mateus (aka Matthew) Zima filed a complaint with Amazon asserting that Plaintiff was selling counterfeit POLYCARE products.

47.     Mr. Zima knowingly made false representations by email to Amazon under penalty of perjury that he was an agent of the owner of the POLYCARE mark. (At that time, defendant Absolute Coatings was the owner of the POLYCARE mark and registration.)  Mr. Zima further alleged that Plaintiff was marketing and selling products under the aforementioned ASIN that were counterfeit, inauthentic, and/or infringed on Defendants' intellectual property rights in the POLYCARE mark.

48.     In response to the notification of this complaint from Amazon, Plaintiff provided Amazon with its receipts showing that its CRAFTSMAN'S CHOICE products were genuine. Amazon then reinstated Plaintiff's listing as a result on October 28, 2022. (*See* Exh. 6.)

49.     Mr. Zima once again filed a complaint on or about November 15, 2022, that Plaintiff's product was counterfeit and "not a Polycare product."  This time, Amazon removed Plaintiff's product listing in response.

50.     According to Amazon's stated policy, the only way to overcome the complaint was by filing a letter of authorization or licensing agreement of the Rights Owner.  (*See* Exh. 7.)

51.     Compliance with Amazon's new requirement would not have been possible because the accused product was a CRAFTSMAN'S CHOICE product that was still listed for sale in a now-changed POLYCARE product offering. The offered product may not have been a POLYCARE product, but it did not carry a POLYCARE mark and was not a counterfeit POLYCARE product. Such an error represents a listing error, not an attempt to sell a counterfeit product.

52.     In response to an email inquiry seeking retraction, Mr. Zima represented to Plaintiff on November 15, 2022 that Supply Depot LLC was "the exclusive seller of polycare [sic] and has sole authority for distribution of all polycare [sic] products."  (*See* Exh. 8.)

53.     Mr. Zima did not indicate that either of Defendants Supply Depot LLC or Polycare Supply Group LLC was the owner of the trademark rights for POLYCARE, that either of Defendants Supply Depot LLC or Polycare Supply Group LLC was authorized to enforce rights under the POLYCARE mark, or that the product sold by Plaintiff improperly bore a counterfeit POLYCARE mark.

54.     In the Amazon Report Infringement form (https://amzn.to/3gcS78P; see below), the person filling out the report form must indicate under penalty of perjury that he is the Rights Owner or an Agent of the Rights Owner.

55.     Amazon expressly excludes those having only an exclusive distribution agreement from using the form to allege infringement.

56.     To file a complaint charging that the product is counterfeit, Mr. Zima selected the expression of his specific concern was "a product is counterfeit (the product or packaging has an unlawful reproduction of a registered trademark)."

57.     When he accused Plaintiff of selling a product bearing an unlawful reproduction of the POLYCARE mark, Mr. Zima knew that the product offered by Plaintiff did not carry the POLYCARE mark.

58.     Mr. Zima filed the complaints in reckless disregard of the truth of the assertions found therein.

59.     Mr. Zima filed the complaints with an intent to remove Plaintiff's product offering of CRAFTSMAN'S CHOICE products from the Amazon listings without regard for the harm to Plaintiff that those allegations might cause.

60.     Mr. Zima's allegations against Plaintiff's CRAFTSMAN'S CHOICE products were knowingly false and made in bad faith.

61.     The form filled out by Mr. Zima in filing his complaints is presented below in part:

**Exclusive or Selective Distribution:** Amazon respects a manufacturer's right to enter into exclusive distribution agreements for its products. However, violations of such agreements do not constitute intellectual property rights infringement. As the enforcement of these agreements is a matter between the manufacturer and the retailers, it would not be appropriate for Amazon to assist in enforcement activities.

Please review the Amazon Intellectual Property Policy to learn more about different infringement types.

**Allegation of Infringement**

Are you the Rights Owner or an Agent?
○ Rights Owner   ○ Agent

The primary complaint pertains to

| trademark concerns - unauthorized use of a word, phrase, symbol, and/or design that identifies and distinguishes the source of the ... ▼ |

The specific concern is

| a product is counterfeit (the product or packaging has an unlawful reproduction of a registered trademark) ▼ |

. . . .
**Statements**
"I have a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner, and that the use of such content(s) is contrary to law."

"I declare, under penalty of perjury, that the information contained in this notification is correct and accurate and that I am the owner or agent of the owner of the rights described above."

"I understand that, if accepted, the information included in this report may be shared by Amazon with all the reported sellers, with the exception of any order ID number(s)."

☐ I have read and accept the statements above.

[ Submit ]

10

62.     It is well known among brand owners that Amazon has a policy of acting on virtually any notice of intellectual property infringement, whether legitimate or not.

63.     As one Amazon expert explained:

In order to meet a minimum liability standard, Amazon will act upon properly submitted and completed notice claims of infringement. They will notify specified marketplace sellers which party reported them, on what listing, and how to reach that would-be rights owner via email. The rest though, is up to you. And, unless you (and possibly your legal team) can prove that the Notice claim is false, Amazon considers it valid and actionable. ***Unfortunately, word is out among potential Notice claim abusers that anyone can submit a form.*** Amazon [is] not worried about additional vetting or verification processes. Investigators merely check the form for completed content in all the right spaces, kill the listings and send off the notifications. They don't independently verify that any of the information is actually correct, or valid. The rights owner makes a legally-binding declaration in the form, and signs it.

See Chris McCabe, *False Infringement Claims are Rife on Amazon*, WebRetailer (Apr. 11, 2018), https://www.webretailer.com/lean-commerce/false-infringement-claims-amazon/      (emphasis added).

64.     On information and belief, Defendants were, at all relevant times, aware that Amazon will act on its report that a product is "counterfeit," regardless of the truth of the report.

65.     Defendants Supply Depot, Polycare Supply Group,  and Mateus Zima were not owners of the POLYCARE mark for floor cleaners when the first complaint was filed.  (*See* Exh. 2.)

66.     Upon information and belief, when the first complaint was filed, Defendant Absolute Coatings did not object to its filing.

67.     When notified of the filing of the first complaint against Plaintiff, Defendant Absolute Coatings did not require retraction of the complaint by Mr. Zima.

68.     Upon information and belief, when the first complaint was filed, Defendant Absolute Coatings condoned, approved, authorized, directed, or ratified the filing of the complaint.

69.     Defendants Supply Depot and Polycare Supply Group condoned, approved, authorized, directed, or ratified the filing with Amazon of both complaints that were filed against Plaintiff and charging it with selling counterfeit products.

70.     Plaintiff's accused product offering did not bear the POLYCARE mark.

71.     Defendants have refused to retract their false complaints.

72.     It is well known that complaints to Amazon put Amazon sellers in jeopardy of a full selling suspension, meaning that Plaintiff's ability to sell any and all products on Amazon would be lost.

73.     As the result of these false representations by Defendants, Amazon removed Plaintiff from the listing and has now characterized Plaintiff internally as a seller of counterfeit products.

74.     The complaints filed by Mr. Zima have harmed Plaintiff's reputation with Amazon as a seller of genuine and legitimate products.

75.     The complaints filed by Mr. Zima represent harmful strikes against Plaintiff's reputation score that have increased the likelihood that Plaintiff would be fully suspended and denied the ability to sell any products on Amazon.

76.     At the times and in the manner set forth above, Defendants' knowingly false statements to Amazon constituted accusations that Plaintiff trafficked in counterfeit goods with knowledge that such allegations would result in a suspended specific listing and could result in suspension of all of Plaintiff's selling privileges.

77.     Trafficking in counterfeit goods is a crime pursuant to 18 U.S.C. § 2320.

78.   Allegations that Plaintiff is selling a counterfeit product is an allegation that Plaintiff is committing the crime of trafficking in counterfeit goods.

79.   Amazon provides buyers with options to return an item that was not the one depicted in the online listing.  Two such reasons available to every buyer include "Wrong item was sent" and "Inaccurate website description." See graphic below from Amazon's page for returning products:



80.   When such a return is made, the seller is informed of the reason and is thus given notice of possible defects in its product listings.  Defendants did not use this option to notify Amazon of a problem with Plaintiff's offering of CRAFTSMAN'S CHOICE products.

81.   The availability of options to correct a mistake in a listed product infer that Defendants could have reported an error in Plaintiff's listing without asserting that Plaintiff was selling counterfeit products.

## FIRST CLAIM FOR RELIEF
### Declaratory Judgment—No Trademark Infringement Or Counterfeiting

82.    Plaintiff repeats and incorporates each of the allegations in the foregoing paragraphs of this Complaint, as if fully set forth herein.

83.   Plaintiff sells genuine CRAFTSMAN'S CHOICE branded floor cleaner products.

84.   Defendants Supply Depot LLC and Polycare Supply Group LLC ("the PSG Defendants"), and Mateus Zima ("Zima") submitted, authorized, approved, or ratified

complaints to Amazon alleging that Plaintiff's CRAFTSMAN'S CHOICE floor cleaner was a counterfeit product and infringed the POLYCARE trademark.

85.     The CRAFTSMAN'S CHOICE brand product sold by Plaintiff is not a counterfeit POLYCARE product.

86.     The CRAFTSMAN'S CHOICE product sold by Plaintiff does not infringe the POLYCARE trademark.

87.     Zima's complaints have caused the deactivation of Plaintiff's listing and its ability to sell the product on Amazon.

88.     Zima's false complaints threaten to cause the suspension of Plaintiff's selling privileges as they relate to any and all products.

89.     Zima's complaints put Plaintiff in jeopardy of permanent suspension of all selling privileges, which will cause extraordinary, irreparable, and untold damage on a business that is in the virtually exclusive business of selling products on e-commerce platforms.

90.     Under these facts, an actual controversy exists among Plaintiff, Zima, and the PSG Defendants.

91.     Plaintiff is entitled to a declaratory judgment that it has not sold counterfeit POLYCARE products.

92.     Plaintiff is entitled to a declaratory judgment that it has not violated Defendant's trademark rights or other rights, whether under Federal or State law.

## SECOND CLAIM FOR RELIEF
### Defamation

93.     Plaintiff repeats and incorporates each of the allegations in the foregoing paragraphs 1-81 of this Complaint, as if fully set forth herein.

94.     The PSG Defendants and Absolute published, caused to be published, approved, or ratified the publication by Zima of false statements to Amazon regarding Plaintiff, as described in this Complaint, including reporting to Amazon that Plaintiff sold "counterfeit" POLYCARE products.

95.     The statements authored by, at the direction of, or with the approval of the PSG Defendants and Absolute which were published by Zima to Amazon, referred to herein, are defamatory *per se* because the false statements impute to the Plaintiff a criminal offense involving moral turpitude, that is, if the allegations were true, would subject Plaintiff to indictment and criminal punishment for trafficking in counterfeit goods under 18 U.S.C. § 2320.

96.     The statements were calculated to, and do, hold the Plaintiff up to unsubstantiated allegations of moral turpitude.  By such publication, the Defendants did injure the Plaintiff's reputation with Amazon as a seller of genuine products.

97.     The statements, individually and taken together as a whole, prejudice Plaintiff in its business relationship with Amazon, casting Plaintiff as a counterfeiter.

98.     Plaintiff did not sell counterfeit POLYCARE products.

99.     Upon information and belief, Defendants were, at a minimum, negligent in making, directing, approving, condoning, or ratifying the false statements to Amazon because, among other things, Defendants knew that Plaintiff sells genuine CRAFTSMAN'S CHOICE products.

100.    Zima's false statements are not protected by any privilege.

101.    Defendants acted with actual malice or with reckless disregard for the truth of the matter contained in Zima's false statements to Amazon and Plaintiff's customers.

15

102.    If Mr. Zima filed the first complaint before July 5, 2022 without the permission or approval of Absolute Coatings, Inc. (the owner of the mark at the time), then Mr. Zima filed that first complaint with the false allegation that he was an agent of the Rights Owner. Such an allegation would represent perjury as the complaint could not be filed without the affirmation that the information in the complaint was accurate under penalty of perjury.

103.    False statements that are directed to the honesty, efficiency, or other business character traits amount to defamation *per se*.

104.    Here, The PSG Defendants, Zima, and Absolute knowingly published, directed, condoned, approved, or ratified the publication of false and derogatory statements by Zima that Plaintiff was engaged in trademark counterfeiting, which is a criminal offense.

105.    Zima's false statements constitute defamation *per se*.

106.    Plaintiff is entitled to damages, costs, and fees as allowed by law.

107.    Plaintiff has suffered injury and, unless Defendants are enjoined from such activity, will continue to suffer injury.

## THIRD CLAIM FOR RELIEF
### Trade Libel

108.    Plaintiff repeats and incorporates each of the allegations in the foregoing paragraphs 1-81 of this Complaint, as if fully set forth herein.

109.    The PSG Defendants, Zima, and Absolute knowingly published, directed, condoned, approved, or ratified the publication of false and derogatory statements by Zima regarding Plaintiff's business to third-party Amazon.

110.    Specifically, the PSG Defendants and Absolute knowingly published, directed, condoned, approved, or ratified the publication of false and derogatory statements by Zima that Plaintiff was selling counterfeit POLYCARE products.

111.    Zima's statements that Plaintiff was selling counterfeit POLYCARE products were calculated to prevent others (including Amazon and Amazon's customers) from doing business with Plaintiff and interfered with Plaintiff's business relationships with these parties.

112.    On information and belief, the PSG Defendants and Absolute knew that submitting a false complaint to Amazon would cause Amazon to suspend Plaintiff's product listing and damage Plaintiff's good seller metrics with Amazon.

113.    Plaintiff suffered special damages as a result of Defendants' statements in the form of lost dealings, damage to selling reputation, and an increased likelihood that Amazon would bar Plaintiff from sales of any products on the Amazon Marketplace.

114.    As a result of Zima's false rights owner complaint, Plaintiff's product listing was removed from Amazon resulting in a direct and immediate loss in revenue.

115.    Plaintiff is entitled to damages, costs, and attorney fees as allowed by law.

116.    Plaintiff has suffered injury and, unless Defendants are enjoined from such activity, will continue to suffer injury.

**FOURTH CLAIM FOR RELIEF**
**Tortious Interference With Business Expectancy**

117.    Plaintiff repeats and incorporates each of the allegations in the foregoing paragraphs 1-81 of this Complaint, as if fully set forth herein.

118.    Plaintiff has had an advantageous business relationship with Amazon, which allows Plaintiff to sell on Amazon's e-commerce platform as a third-party seller.

119.    Plaintiff is in a contractual relationship with Amazon that allows Plaintiff to sell products on the Amazon Marketplace.

120.    Plaintiff has a reasonable expectancy that it will profit from sales of products on the Amazon Marketplace as a result of its relationship with Amazon.

121.   At all relevant times, the PSG Defendants, Zima, and Absolute were aware of Plaintiff's business relationship with Amazon and the expectancies associated therewith.

122.   At all relevant times, Defendants were aware of the terms and conditions of Amazon for selling on Amazon as well as the advantageous business relationship that comes with being an Amazon seller.

123.   Defendants, through the actions of Mateus Zima acting on their behalf and authorization, intentionally and improperly interfered with Plaintiff's advantageous relationship with Amazon by filing false complaints, in writing, with Amazon that Plaintiff was selling counterfeit products.

124.   Defendants' conduct directly and proximately caused harm to Plaintiff's relationship with Amazon and Amazon's view of Plaintiff as a reputable seller.

125.   Defendants intended to cause Amazon to suspend Plaintiff's ability to sell CRAFTSMAN'S CHOICE cleaner on Amazon and thereby interfere with the business relationship Amazon had with Plaintiff.

126.   Defendants had actual knowledge that their actions would cause Amazon to suspend Plaintiff's ability to sell CRAFTSMAN'S CHOICE cleaner on Amazon.

127.   Defendants' accusations of counterfeiting, made directly to Amazon, were for the improper purpose of suppressing competition.

128.   Defendants' actions interfered with Plaintiff's business relationship with Amazon and proximately caused Plaintiff's listing to be suspended.

129.   The intentions of Defendants are demonstrated by the fact that Defendants ignored correspondence from Plaintiff's counsel and refused to retract the complaints.

130.     The accusations made by Zima at the direction, approval, or ratification of the PSG Defendants and Absolute were false and were made maliciously and with ill will.

131.     Plaintiff has been damaged by suspension of its listing and the associated lost revenue.

132.     Plaintiff is entitled to damages, costs and attorney' fees as allowed by law.

133.     Plaintiff has suffered injury and, unless Defendants are enjoined from such activity, will continue to suffer injury.

**FIFTH CLAIM FOR RELIEF**
**Unfair Competition Pursuant To New Jersey Common Law**

134.      Plaintiff repeats and incorporates each of the allegations in the foregoing paragraphs 1-81 of this Complaint, as if fully set forth herein.

135.     This is a claim for unfair competition, arising under the common law of the State of New Jersey.

136.     The PSG Defendants, as market competitors of Plaintiff, engaged in deceptive conduct by disseminating false and misleading representations to Amazon through its agent, Mateus Zima, that Plaintiff sold counterfeit POLYCARE products.

137.     As a direct and proximate result of the false and misleading representations of fact made by the PSG Defendants and Mateus Zima, Plaintiff has been damaged and is entitled to monetary relief in an amount to be determined at trial.

138.     As a direct and proximate result of the actions by the PSG Defendants and Mateus Zima, Plaintiff has suffered and continues to suffer great and irreparable injury, for which Plaintiff has no adequate remedy at law.  Defendants will continue their actions, constituting false or misleading representation of fact and unfair competition, unless enjoined by this Court.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff prays for judgment as follows:

A.      An order declaring that Plaintiff has not infringed any valid and enforceable intellectual property right owned by Defendants;

B.      Preliminary and permanent injunctive relief restraining Defendants, their agents, servants, employees, successors and assigns, and all others in concert and privity with Defendants, from filing false complaints with Amazon and any other e-commerce platform that pertain to Plaintiff;

C.      Injunctive relief requiring Defendants to retract all complaints that they have filed on Amazon and any other e-commerce platform that pertain to Plaintiff;

D.      An award of all damages that Plaintiff has suffered as a result of Defendants' defamation, false representations, and unfair competition;

E.      An award of all damages that Plaintiff has suffered as a result of Defendants' tortious interference;

F.      An award of all damages that Plaintiff has suffered as a result of Defendants' defamation;

G.      An award of all damages that Plaintiff has suffered as a result of Defendants' trade libel;

H.      An award of all costs and attorney fees incurred in this Action; and

I.      Such other and further relief as the Court shall find just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial for all issues triable by jury including, but not limited

to, those issues and claims set forth in any amended complaint or consolidated action.

Respectfully submitted,

LERNER DAVID LLP
*Attorneys for Plaintiff Renex NY Corp.*

Dated: March 24, 2023           By    s/ Russell W. Faegenburg
                                      Russell W. Faegenburg
                                      Tel.   908.654.5000
                                      E-mail:rfaegenburg@lernerdavid.com
                                            litigation@lernerdavid.com

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

The undersigned hereby certifies, pursuant to Local Civil Rule 11.2, that with respect to the matter in controversy herein, neither Plaintiff nor Plaintiff's attorney is aware of any other action pending in any court, or of any pending arbitration or administrative proceeding, to which this matter is subject.

Dated: March 24, 2023           By    s/ Russell W. Faegenburg
                                      Russell W. Faegenburg
                                      Tel.  908.654.5000
                                      E-mail: rfaegenburg@lernerdavid.com
                                            litigation@lernerdavid.com