UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **RENEX NY CORP.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**SUPPLY DEPOT LLC; MATEUS ZIMA; ABSOLUTE COATINGS, INC., and POLYCARE SUPPLY GROUP, LLC,**<br><br>**Defendants.** | Civil Action No.:<br>2:23-cv-00489-WJM<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

This matter comes before the Court upon Defendant[1] Absolute Coatings, Inc.'s ("Defendant" or "Absolute") Motion to Dismiss Plaintiff Renex NY Corp.'s First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) and Defendant Absolute's related Motion for Sanctions pursuant to Federal Rule of Civil Procedure 11. *See* ECF Nos. 22, 30, 31. The Court decides the matters without oral argument. *See* Fed. R. Civ. P. 78(b). After careful consideration of the parties' submissions, and for the reasons set forth below, Defendant's Motion to Dismiss is **GRANTED** and Defendant's Motion for Sanctions is **DENIED**.

**I.   BACKGROUND**
    **A.   Facts**

Plaintiff Renex NY Corp. ("Plaintiff") has a principal place of business in New Jersey and is a seller of products in the online marketplace Amazon.com ("Amazon"). FAC, ECF No. 22, at ¶¶ 1, 9. One of the products offered by Plaintiff is a two-pack hardwood floor cleaner bearing the mark "Craftsman's Choice." *Id.* Plaintiff bought all of its "Craftsman's Choice" products from an authorized distributor of Defendant. *Id.* at ¶ 12. Absolute was the owner of record of the PolyCare registration (Reg. No. 1,574,242) from its filing in May 1989 until an assignment to PolyCare Supply Group, LLC, ("Supply Group") on July 5, 2022, which was recorded on November 29, 2022. *Id.* at ¶ 4. When Plaintiff sold the floor cleaners before July 5, 2022, the listing bore the title "(2 Pack) PolyCare 70020 Cleaner concentrate 20 OZ." *Id.* at ¶ 10. Up until July 5, 2022, Absolute was the owner of the at-issue PolyCare registration. *Id.* at ¶¶ 15, 16. At some point in 2022, the owners of the PolyCare mark announced a transition of the brand name for the product

---

[1] The Motion before the Court concerns solely Absolute. Absolute, along with PolyCare Supply Group, LLC, Matthew Zima, and Supply Depot LLC ("Supply Depot"), shall be referred to collectively as "Defendants."

from PolyCare to Craftman's Choice, which contained the same product formula. *Id.* at ¶ 20.

After Plaintiff sent its Craftman's Choice product to Amazon, the product image of the listing was changed to show two bottles of PolyCare product, rather than the previous picture of Craftman's Choice bottles. *Id.* at ¶ 19. On June 29, 2022, Plaintiff received a notification from Amazon stating Matthew Zima ("Zima") filed a complaint with Amazon asserting that Plaintiff's product represented a counterfeit PolyCare product, which resulted in the removal of Plaintiff's product. *Id.* at ¶¶ 21, 48. On November 22, 2022, Plaintiff's counsel emailed Christopher Olszyk of Fox Rothschild LLP, who was listed as the original counsel of record for the PolyCare registration, regarding the complaint filed by Zima.[2] *Id.* at ¶ 23. The email stated "[d]o you know, or can you confirm whether, Mr. Zima is associated with Polycare Supply Group and that he has authorization to enforce the POLYCOAT mark on its behalf?" *Id.* Plaintiff alleges Mr. Olszyk did not respond to that email and therefore Plaintiff had a reasonable belief that Absolute was aware of, condoned, or otherwise approved of the actions of Zima in submitting the complaint filed with Amazon on June 29, 2022. *Id.* at ¶ 25. Plaintiff also contends it had a reasonable belief that Absolute, Supply Depot, and PolyCare Supply Group condoned, approved, authorized, directed, or ratified the filing of complaints with Amazon. *Id.* at ¶¶ 68, 69.

In response to the complaint with Amazon, Plaintiff provided receipts showing that its Craftman's Choice products were genuine. *Id.* at ¶ 48. In response, Amazon reinstated Plaintiff's listing on October 28, 2022. *Id.* Zima filed another complaint on or about November 15, 2022, again asserting that Plaintiff's product was a counterfeit, which again resulted in Plaintiff's listing being removed. *Id.* at ¶ 49. Plaintiff alleges that the only way to overcome the complaint was by filing a letter of authorization or licensing agreement of the Rights Owner, which would not have been possible "because the accused product was a Craftman's Choice product that was still listed for sale in a now-changed PolyCare product offering." *Id.* at ¶¶ 50, 51. On November 15, 2022, Zima represented to Plaintiff via email that Supply Depot LLC was the exclusive seller of PolyCare and has sole authority for distribution of all PolyCare products. *See* FAC, Ex. 8. Zima further stated that Craftsman's Choice products have no affiliation to any PolyCare products. *Id.*

Plaintiff contends that these allegations of selling a counterfeit product not only resulted in the de-listing of Plaintiff's products, but also harmed Plaintiff's reputation with Amazon, increased the likelihood that Plaintiff's selling privilege with Amazon would be fully suspended, and generally tarnished Plaintiff's reputation by alleging Plaintiff is trafficking in counterfeit goods. *Id.* at ¶¶ 73-75, 78.

**B. Procedural Background**

---

[2] Plaintiff alleges Zima knowingly made false representations by email to Amazon under the penalty of perjury that he was an agent of the owner of the PolyCare Mark, which at the time of the June 29, 2022, complaint and until July 5, 2022, was Absolute. *See* FAC at ¶ 47.

2

Plaintiff filed its initial complaint against Absolute, Supply Depot, and Zima on January 27, 2023. Plaintiff filed its FAC on March 24, 2023, adding PolyCare Supply Group LLC as a defendant. Plaintiff's FAC contains five claims. Count One, against Supply Depot, Polycare Supply Group, and Zima, seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 that Plaintiff has not sold counterfeit PolyCare products and has not violated Defendants' trademark rights. *See* FAC, ECF No. 22 at ¶¶ 82-92. Count Two, against all Defendants, asserts a defamation *per se* claim stemming from the statements published by Zima to Amazon. *Id.* at ¶¶ 93-107. Plaintiff alleges the statements were authored by, at the direction of, or with the approval of Absolute, Supply Group, and Supply Depot and defame Plaintiff by imputing a criminal offense that, if true, would subject Plaintiff to criminal punishment. Plaintiff alleges that Defendants made, directed, approved, condoned, or ratified the false statements. *Id.* at ¶ 99. Plaintiff also asserts that "[i]f Mr. Zima filed the first Complaint [ ] without the permission or approval of Absolute Coatings, Inc. [ ], then Mr. Zima filed that [ ] with the false allegation that he was an agent of the Rights Owner. Such an allegation would represent perjury…" *Id.* at ¶ 102.

Count Three, against all Defendants, asserts a trade libel claim stemming from the allegedly false and derogatory statements made by Zima to Amazon. *Id.* at ¶¶ 108-116. Plaintiff reasserts its claims regarding the publishing, directing, condoning, approving, or ratifying of false statements made by Zima. *Id.* at ¶ 110. Plaintiff also contends that the removal of its product listing resulted in a direct and immediate loss in revenue. *Id.* at ¶ 114. Count Four, against all Defendants, alleged tortious interference with business expectancy. *Id.* at ¶¶ 117-133. Specifically, Plaintiff alleges Defendants were aware of Plaintiff's business relationship with Amazon and, through Zima, intentionally and improperly interfered with Plaintiff's relationship with Amazon by filing false complaints. *Id.* at ¶ 123. Count Five, against Supply Depot, Supply Group, and Zima, asserts unfair competition pursuant to New Jersey Common law. *Id.* at ¶¶ 134-138. Plaintiff contends, Supply Depot and Supply Group, as market competitors of Plaintiff, engaged in deceptive conduct by disseminating false and misleading representations to Amazon through its agent, Zima. *Id.* at ¶ 136.

Absolute filed its Motion to Dismiss Counts Two, Three, and Four on April 24, 2023.[3] ECF No. 30. Plaintiff filed its opposition on May 22, 2023, and Absolute filed its reply on May 30, 2023. ECF Nos. 34, 37. Absolute filed its Motion for Sanctions on May 1, 2023. ECF No. 31. Plaintiff filed its opposition on May 22, 2023, and Absolute filed its reply on May 30, 2023. ECF Nos. 35, 38.

## II.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The movant bears the burden of showing that no claim has been stated.

---

[3] Although Absolute argues in its briefing that Counts One to Five should be dismissed in its entirety, Plaintiff concedes in its opposition that Counts One and Five do not apply to Absolute. *See* Def. Mot. at 9, 11; Pl. Opp. at 3.

*Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under FRCP 12(b)(6), "all allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The Court need not accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a 12(b)(6) motion, the Court is ordinarily limited to the facts as alleged in the complaint, the exhibits attached thereto, and matters of public record. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1996 (3d Cir. 1993). The Court may, however, look outside the pleadings and also consider "document[s] integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Asbestos Prod. Liability Litig. (No. VI)*, 822 F.3d 125, 134 n.7 (3d Cir. 2016).

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## III. DISCUSSION

Plaintiff asserts three counts against Absolute. Count Two alleges Absolute *per se* defamed Plaintiff through the alleged defamatory actions of its agent, Zima. Count Three, trade libel, similarly alleges Absolute made false and derogatory statements through its agent, Zima. Lastly, Count Four alleges Absolute tortiously interfered with Plaintiff's business expectancy with Amazon through Zima's alleged false complaints. All three counts against Absolute hinge on agency theory, as the FAC does not allege Absolute itself took any action against Plaintiff.

### A. Agency Theory

Three theories of agency may support vicarious liability against Absolute: actual authority, apparent authority, and ratification. *See Valdes v. Century 21 Real Estate, LLC*, No. 2:19-05411, 2019 U.S. Dist. LEXIS 182616, at *9 (D.N.J. Oct. 21, 2019). Absolute argues that Counts Two, Three, and Four should be dismissed because the FAC demonstrates that Absolute did nothing actionable and acted independently of the other Defendants. *See* Def. Mot. at 11. Furthermore, Absolute claims the FAC fails to adequately allege an agency relationship with Zima. *See* Def. Reply at 3-8. Absolute contends that the FAC contains contradictory assertions, on one hand claiming Zima knowingly made false representations to Amazon that he was an agent of the owner of the PolyCare trademark (which at the time of the first complaint was Absolute) and on the other hand claiming Zima was an agent of Absolute. *See* Def. Mot. at 15-17. Plaintiff, in its opposition, argues

4

that Zima's statement to Amazon, which was made under the penalty of perjury, that he was an agent of Absolute ties Absolute to the alleged misconduct or, alternatively, creates an issue of fact that cannot be resolved on a motion to dismiss. Pl. Opp. at 4. Plaintiff concedes it pled contradictory assertions but argues it did so "because both are plausible." *Id.* at 6. For the reasons set forth below, Plaintiff has failed to plausibly allege any agency theory that would attach vicarious liability to Absolute.

### i. Actual Authority

"Actual authority is the authority that a principal expressly or implicitly gives an agent." *United States v. Martinez*, 613 F.2d 473, 481 (3d Cir. 1980); *Lind v. Schenley Indus., Inc.*, 278 F.2d 79, 85 (3d Cir. 1960) ("Actual authority means, as the words connote, authority that the principal, expressly or implicitly, gave the agent."); *see Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1199 (M.D. Tenn. 2017). An agent acts with actual authority if it "reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Restatement (Third) of Agency § 2.01. Here, Plaintiff does not sufficiently allege, nor do the exhibits to the FAC support, the assertion that Zima acted with actual authority when making his alleged defamatory statements to Amazon. *See* FAC Ex. 8 (November 15, 2022, email from Matthew Zima to Maxim Ohay stating "supply depot is the exclusive seller of polycare and has sole authority for distribution for all polycare products. Canlak [who works with Canlack Coatings/Absolute Coatings] has no authority to polycare brand or products, nor has any legal standing to make comments in this situation."). Plaintiff has failed to allege that Absolute expressly or implicitly gave Zima authority as its agent.

### ii. Apparent Authority

Apparent authority "arises when a third-party reasonably believes that the . . . actor has authority to act on behalf of the principal and that belief can be traced to the principal's manifestations." *Bridgewater-Raritan Educ. Ass'n v. Bd. of Educ. of Bridgewater-Raritan Sch. Dist., Somerset Cty.*, 221 N.J. 349, 363 (2015) (quoting Restatement (Third) of Agency, § 2.03). "Critically, 'an agent's apparent authority originates with expressive conduct by the principal toward a third party through which the principal manifests assent to action by the agent with legal consequences for the principal." *Gayles v. Sky Zone Trampoline Park*, 468 N.J. Super. 17, 27 (Super. Ct. App. Div. 2021) (quoting Restatement (Third) of Agency, § 3.03 cmt. b). Even accepting as true Plaintiff's allegations and affording the benefit of favorable inferences drawn therefrom, the FAC has failed to plausibly allege Zima acted with apparent authority. Plaintiff does not allege that it was *Absolute* that caused Plaintiff to reasonably believe Zima had authority despite the absence of an actual agency relationship. Plaintiff claims Zima gave a sworn statement to Amazon that "he was an agent of the owner of the PolyCare mark," which at the time of the first complaint on June 29, 2022, and until July 5, 2022, was Absolute. FAC at ¶ 47. Any implication that Zima was acting as an agent of Absolute from its statement to Amazon was dispelled in Zima's November 15, 2022 email to Maxim Ohay stating "[p]olycare is the exclusive product of Supply Depot LLC and no other parties were give[n] any rights or

5

authorization for use." *See* FAC Ex. 8. A third-party's reasonable belief of the agent's authority to act must be traced to the principal's own manifestations. Plaintiff's belief that Zima had apparent authority was not only implausible but is untraceable to a manifestation of Absolute.

### iii. Ratification

"Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him." *Thermo Contracting Corp. v. Bank of N.J.*, 69 N.J. 352, 361 (1976). To establish ratification, the person must be shown to have (1) an intent to ratify, and (2) full knowledge of all material facts. *In re Dwek*, No., 2011 U.S. Dist. LEXIS 23227, 2011 WL 84365, *7 (D.N.J. March 8, 2011). Ratification may be express or implied, and intent may be inferred from the failure to repudiate an unauthorized act. *Thermo*, 69 N.J. 352, 297 (1976).

Plaintiff alleges when Absolute was notified of the filing of the first complaint by Zima against Plaintiff, Absolute "did not require retraction of the complaint by Mr. Zima." FAC ¶ 67. Plaintiff further alleges when it reached out to Christopher Olsyk, counsel of record for the Craftsman's Choice registration, on November 22, 2022, inquiring whether Zima was associated with Polycare Supply Group and has authorization to enforce the mark on its behalf, it was met with silence. *Id.* at ¶ 23. From that silence, Plaintiff alleges it "ha[d] a reasonable belief that Absolute Coatings was aware of, condoned, or otherwise approved of the actions of Mr. Zima in submitting the complaint filed with Amazon around June 29, 2022, that alleged Plaintiff was selling counterfeit Polycare products." *Id.* at ¶ 25. However, these allegations, when read in conjunction with Zima's November 15, 2022, email to Maxim Ohay and Plaintiff's counsel's November 22, 2022, email to Mr. Olsyk, appear implausible. *See* FAC Exs. 8, 10. Zima's November 15, 2022, email states that "supply depot is the exclusive seller of polycare and has sole authority for distribution of all polycare products." *Id.* Zima goes on to say that "[a]ny further infringement on polycare listings or products will be followed by strict enforcement of all applicable trademark and patent laws. Polycare is the exclusive product of Supply Depot LLC *and no other parties were give[n] any rights or authorization for use.*" *Id.* at Ex. 8 (emphasis added). This email clearly indicates that Zima was speaking on behalf of Supply Depot LLC, not Absolute. Furthermore, Plaintiff's counsel's email on November 22, 2022 asked Mr. Olsyk "[d]o you know, or can you confirm whether, Mr. Zima is associated with Polycare Supply Group and that he has authorization to enforce the Polycoat mark on its behalf?" *Id.* at ex. 10. Plaintiff counsel's inquiries about Supply Group's role in this despite receiving an email exactly seven days prior from Zima himself indicating that Supply Depot is the exclusive seller of polycare and retains sole authority for its distribution indicates Plaintiff did not believe Absolute was behind Zima's complaints to Amazon. Furthermore, Zima's November 15, 2022, email shows Defendant Absolute may not have had full knowledge of all material facts – specifically that Zima was asserting his trademark rights for Polycare on behalf of Supply Depot. Plaintiff has therefore failed to adequately allege Absolute

6

ratified Zima's actions. Accordingly, Defendant Absolute's Motion to Dismiss Counts Two, Three, and Four is **GRANTED** and **DISMISSED WITHOUT PREJUDICE**.

### B. Sanctions

The Court next turns to Defendant's motion for sanctions. Defendant moves for Rule 11 sanctions against Plaintiff and his counsel for filing what Defendant characterized as frivolous and unwarranted claims against Defendant. Def. Mot. for Sanctions at 9, ECF No. 31. Defendant claims Plaintiff knew or should have known through adequate due diligence that Absolute was not the Polycare trademark holder when Plaintiff was allegedly injured. *Id.* at 9-11. Defendant further argues that Counts Two, Three, and Four lack evidentiary support and could not have reasonably been made in good faith. *Id.* at 11-15. Specifically, Defendant points to an email Mr. Olszyk's colleague, Mr. Lagerenne sent to Plaintiff's counsel confirming Absolute's lack of involvement in any complaints by Zima and offering to reach out "to the buyer of the Polycare brand to see if we can correct the situation and get them to withdraw the notices."[4] *Id.* at 15, Ex. 3. Lastly, Defendant points to the inherent contradictions in Plaintiff's FAC, which as the Court discussed above, shows Zima himself declaring that "[s]upply [d]epot is the exclusive seller of [p]olycare and has sole authority for distribution of all Polycare products." *Id.* at 16-18; FAC, Ex. 8. Defendant's counsel seeks compensation in the way of its fees and costs associated with filing the Motion to Dismiss and the Motion for Sanctions. Plaintiff opposes the motion, contending Zima's sworn statement to Amazon that he was acting on behalf of the Rights Owner of Polycare registration, which at the time of the first complaint on June 29, 2022, and until July 5, 2022, was Absolute, makes Defendant liable under agency theory and therefore responsible. *See* Pl. Opp. to Mot. for Sanctions, at 5-6.

"'[T]he main purpose of Rule 11 is to deter, not to compensate.'" *See Zuk v. E. Pa. Psychiatric Inst. of the Med. Coll. of Pa.*, 103 F.3d 294, 300-01 (3d Cir. 1996) (quoting 5A Wright & Miller, Fed. Practice & Procedure § 1336 (2d ed. Supp. 1996)). The Third Circuit instructs "that '[f]ee-shifting is but one of several methods of achieving the various goals of Rule 11,' that courts should 'consider a wide range of alternative possible sanctions for violation of the rule,' and that the 'district court's choice of deterrent is appropriate when it is the minimum that will serve to adequately deter the undesirable behavior.'" *Id.* at 301 (quoting *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988)). "Rule 11 provides that attorneys may be sanctioned if they, among other things, fail to make a reasonable inquiry into the legal legitimacy of a pleading." *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 297 (3d Cir. 2010). "A district court must determine whether the attorney's conduct was 'objectively reasonable under the circumstances.'" *Id.* (quoting *Simmerman v. Corino*, 27 F.3d 58, 62 (3d Cir. 1994)). "Sanctions are to be applied only in the exceptional

---

[4] Defendant also points out that on February 28, 2023 and March 24, 2023, counsel for the Defendant sent two separate letters to counsel for the Plaintiff detailing fatal deficiencies in Plaintiff's complaint and first amended complaint, respectively, and requesting that the complaints be dismissed voluntarily. *See* Cali R. Spota Declr. Exs. A, B.

7

circumstance where a claim or motion is patently unmeritorious or frivolous." *Id.* (citation and quotation omitted). Rule 11 "must not be used as an automatic penalty against an attorney or party advocating the losing side of a dispute, and it should not be applied to adventuresome, though responsible, lawyering which advocates creative legal theories." *Id.* (internal quotation and citation omitted).

The imposition of Rule 11 sanctions is at the discretion of the district court. *See A.W.*, 2022 U.S. App. LEXIS 8885, 2022 WL 989348, at *5. But "the standard under Rule 11 is 'stringent[.]'" *Moeck v. Pleasant Valley Sch. Dist.*, 844 F.3d 387, 391 n.7 (3d Cir. 2016). "Courts apply 'an objective standard of reasonableness under the circumstances to Rule 11's requirements." *Waugaman v. City of Greensburg*, 841 F. App'x 429, 434 (3d Cir. 2021) (quoting *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 94 (3d Cir. 1988)). To be sanctionable, a claim must be "wholly without merit[.]" *Moeck*, 844 F.3d at 392 n.9. In sum, "Rule 11 sanctions are reserved for correcting litigation abuse." *Ario*, 618 F.3d at 297. In deciding a Rule 11 motion, "[a]ny doubt . . . should be resolved in favor of the party charged with the violation." *Sanders v. Hale Fire Pump Co.*, No. 87-2468, 1988 U.S. Dist. LEXIS 5239, 1988 WL 58966, at *1 (E.D. Pa. June 1, 1988) (citing *Eavenson, Auchmuty & Greenwald v. Holtzman*, 775 F.2d 535, 544 (3d Cir. 1985)).

The claims against Defendant, as discussed above, rely solely on agency theory. Plaintiff has not pled Zima had actual or apparent authority and appears to have relied solely on ratification as a basis for vicarious liability. Despite Plaintiff's assertions that a principal need not be aware of the agent's actions for the principal to be liable, the same cannot be said with respect to ratification, which requires an intent to ratify. *See* Pl. Opp. to Mot. for Sanctions at 6; *Thermo Contracting Corp. v. Bank of N.J.*, 69 N.J. 352, 361 (1976). Plaintiff relies on Defendant's alleged silence in response to its inquiries to Defendant regarding Zima's actions as evidence of Defendant's ratification. However, as Exhibit A to Defendant's Motion for Sanctions clearly demonstrates, Defendant did in fact respond substantively to Plaintiff's inquiries, denied its involvement with Zima's actions, and offered to work with Plaintiff in rectifying the situation. ECF No. 31. Furthermore, Plaintiff's own FAC shows that Zima himself, the alleged agent of Defendant, assertively stated that "supply depot is the exclusive seller of polycare and has sole authority for distribution for all polycare products. Canlak [who works with Canlack Coatings/Absolute Coatings] has no authority to polycare brand or products, nor has any legal standing to make comments in this situation." FAC Ex. 8. Nonetheless, as these admissions by Defendant and Zima are not sworn statements, and it is unclear if Plaintiff received Defendant's email[5], *see* Def. Mot. for Sanctions Ex. A, Rule 11 dictates that any doubt be resolved in favor of the party charged with the violation. *See Eavenson*, 775 F.2d 535, 544 (3d Cir. 1985). Therefore, the Court exercises its discretion and declines to impose Rule 11 sanctions on Plaintiff at this time. *See Brubaker Kitchens, Inc. v. Brown*, 280 F. App'x 174, 185 (3d Cir. 2008) ("It is well-settled that the test for determining whether Rule 11

---

[5] Tellingly, however, Plaintiff does not even acknowledge or respond substantively to Defendant's citation of its email to Plaintiff responding to its inquiries regarding Zima's complaints to Amazon. *See* Pl. Opp. to Mot. for Sanctions

sanctions should be imposed is one of reasonableness under the circumstances, the determination of which falls within the sound discretion of the District Court."). Defendant's Motion for Sanctions is **DENIED WITHOUT PREJUDICE.**

### IV.  CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED**. Counts Two, Three, and Four **DISMISSED WITHOUT PREJUDICE** with respect to Absolute. Defendant's Motion for Sanctions is **DENIED WITHOUT PREJUDICE**.

An appropriate order follows.

WILLIAM J. MARTINI, U.S.D.J.

Date: July 18, 2023